UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAMES E. HINKLE,

        Petitioner,

           v.                    CAUSE NO. 3:19-CV-577-RLM-MGG

WARDEN,

        Respondent.

## OPINION AND ORDER

James E. Hinkle, a prisoner without a lawyer, filed an amended habeas corpus petition to challenge his conviction for child molestation and sexual misconduct with a minor under Case No. 20D03-812-FB-61. Following a jury trial, on October 22, 2013, the Elkhart Superior Court sentenced him as a repeat sexual offender to forty-two years of incarceration.

## FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> In the summer of 2004, S.B., who lived in Michigan with his mother, visited family in Elkhart County, Indiana. At the time, S.B. was thirteen years old. While S.B. was in Elkhart County for a few weeks, his mother returned to Michigan.

Hinkle is part of S.B.'s extended family in Elkhart County, and S.B. spent some of the nights he was in Elkhart County at Hinkle's residence. On at least one occasion while S.B. was with Hinkle at Hinkle's residence, Hinkle isolated S.B. and performed oral sex on S.B. Hinkle then had S.B. manually stimulate him.

In the summer of 2005, when S.B. was fourteen years old, he again spent some time over the summer at Hinkle's residence. On at least one occasion during that time, Hinkle again isolated S.B. and performed oral sex on him. And Hinkle again had S.B. manually stimulate him.

Over the next few years, S.B. began using illegal drugs. In the summer of 2008, when S.B. was seventeen years old, he used opiates and marijuana on a nearly daily basis. He was also experimenting with other drugs, and he had tried heroin a handful of times. His mother became concerned about changes in S.B.'s behavior, and when he again stayed with his family in Elkhart County that summer, his grandmother suspected drug use. S.B.'s family eventually discovered that S.B. had been using drugs and confronted him. During their discussion, S.B. admitted to his drug use and also revealed that Hinkle had been molesting him.

S.B.'s family reported Hinkle's molestations to local police. On August 13, 2008, S.B. participated in a video-recorded interview at the Child and Family Advocacy Center ("CFAC"). That interview was conducted by a CFAC employee and attended by Elkhart City Police Department Detective Carlton Conway as well as a representative of the Indiana Department of Child Services. A few days after that interview, Detective Conway conducted his own interview with S.B., and he separately interviewed P.B. and S.M., S.B.'s grandmother and uncle, respectively. Those interviews were also video-recorded. Susan Snyder, the deputy prosecuting attorney, conducted a third, unrecorded interview of S.B. in November.

* * *

The morning of trial, the State moved to amend the charging information such that the State charged Hinkle with child molesting, as a Class A felony; sexual misconduct with a minor, as a Class D felony; and for being a repeat sexual offender.

* * *

> The jury found Hinkle guilty on the child molesting counts, and he then admitted to being a repeat sexual offender. The trial court entered its judgment of conviction and sentence accordingly

ECF 11-10 at 3-6; Hinkle v. State, 97 N.E.3d 654, 659 (Ind. App. 2018).

Mr. Hinkle contends that the trial court deprived him of the right to present a complete defense by excluding evidence about the victim's motive to fabricate the accusation against him. He also asserts that he is entitled to habeas relief based on claims of prosecutorial misconduct and ineffective assistance of counsel.

PROCEDURAL DEFAULT

Every habeas corpus inquiry begins with whether the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); Lewis v. Sternes, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. Boyko v. Parke, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." Anderson v. Brevik, 471 F.3d 811, 814–15 (7th Cir. 2006). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." Lewis v. Sternes, 390 F.3d at 1025. "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." Id. "A habeas petitioner who has exhausted his state court

remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." Id.

In his petition to transfer to the Indiana Supreme Court, Mr. Hinkle argued that, during post-conviction proceedings, the prosecution should have provided him with the information made available to trial counsel, but he didn't argue that the prosecution violated its obligation to disclose material, exculpatory evidence before his conviction as required by Brady v. Maryland, 373 U.S. 83 (1963). ECF 11-11. This distinction is meaningful because the Supreme Court of the United States has not held that "this disclosure obligation continued after the defendant was convicted and the case was closed." D.A.'s Off. for Third Jud. Dist. v. Osborne, 557 U.S. 52, 68 (2009). Further, "states have no obligation to provide post-conviction relief, which is not part of the criminal proceeding itself and is considered to be civil in nature," Simmons v. Gramley, 915 F.2d 1128, 1137 (7th Cir. 1990), so a claim that he did not receive discovery during post-conviction proceedings is not a basis for habeas relief. Because Mr. Hinkle didn't present a cognizable claim of prosecutorial misconduct to the Indiana Supreme Court, he can't proceed on such a claim on federal habeas review.

Mr. Hinkle presented the claim about the right to present a complete defense to the Court of Appeals of Indiana and the Indiana Supreme Court, so the court will consider this claim. ECF 11-1; ECF 11-11. Before the Indiana Supreme Court, Mr. Hinkle presented only the ineffective assistance claims regarding the lack of objection to the amended charges; the lack of objection to the delayed trial under Ind. Crim R. 4(C); and the lack of a request for an instruction on unanimity. ECF 11-11. Therefore,

the court will consider the merits of only these ineffective assistance of counsel claims.

## STANDARD OF REVIEW

The Warden argues that the court should review Mr. Hinkle's claim that the trial court violate his right to present a complete defense under the deferential standard set forth in 28 U.S.C. § 2254(d)(1) instead of conducting a de novo review. If a state court adjudicates a claim on the merits, federal courts may grant habeas relief on that claim only if the petitioner demonstrates that the "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). These standards are "intentionally difficult to meet." Woods v. Donald, 575 U.S. 312, 316 (2015). To demonstrate that a state court has unreasonably applied federal law, "a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id.

"When no state court has squarely addressed the merits of a habeas claim, however, we review the claim under the pre-AEDPA standard of 28 U.S.C. § 2243, under which we dispose of the matter as law and justice require." Morales v. Johnson, 659 F.3d 588, 599 (7th Cir. 2011) "This is a more generous standard: we review the

petitioner's constitutional claim with deference to the state court, but ultimately de novo." Id. The Court of Appeals of Indiana addressed the exclusion of evidence on the victim's motive to fabricate evidence in the context whether the exclusion was proper under State evidentiary rules, but neither the Court of Appeals of Indiana nor the Indiana Supreme Court addressed Mr. Hinkle's claim in the context of whether it violated his constitutional right to present a complete defense. ECF 11-10; ECF 11-16. At first glance, it appears that the court should review the claim de novo.

Perhaps acknowledging these circumstances, the Warden argues the appellate court's quotation and in-depth discussion of another opinion, Hyser v. State, 996 N.E.2d 443 (Ind. App. 2013), demonstrates that the appellate court considered Mr. Hinkle's constitutional claim on the merits. The Warden notes that Hyser discussed and resolved the constitutional issue of whether the exclusion of evidence violated a criminal defendant's right to present a complete defense. Consequently, this court must determine whether the appellate decision, including the reliance on Hyser, is sufficient to demonstrate that the appellate court considered Mr. Hinkle's constitutional claim on the merits.

"[D]etermining whether a state court decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." Harrington v. Richter, 562 U.S. 86, 98 (2011). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. "When a federal claim has been presented

to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 99. "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99–100.

In Johnson v. Williams, 568 U.S. 289 (2013), the U.S. Supreme Court extended the rebuttable presumption to cases in which a state court addresses some but not all claims. It found that a presumption that a state court adjudicated a claim on the merits was warranted even if the state court didn't address it a written opinion, noting that state courts routinely decline to address all asserted claims for three reasons. Id. at 298. First, "a state appellate court may regard its discussion of the state precedent as sufficient to cover a claim based on the related federal right." Id. at 299. "Second, a state court may not regard a fleeting reference to a provision of the Federal Constitution or federal precedent as sufficient to raise a separate federal claim." Id. "Third, there are instances in which a state court may simply regard a claim as too insubstantial to merit discussion." Id. at 299-300.

Responding to the State of California's position in Johnson v. WIlliams, the Supreme Court addressed whether the presumption should be rebuttable as follows:

> Not satisfied with a strong but rebuttable presumption, [California] urges us to make the presumption irrebuttable. Specifically, [California] contends that a state court must be regarded as having adjudicated a federal claim on the merits if the state court addressed the substance of an asserted trial error. Suppose, for example, that a defendant claimed in state court that something that occurred at trial violated both a provision of the Federal Constitution and a related provision of state law, and suppose further that the state court, in denying relief, made no

> reference to federal law. According to [California's] argument, a federal habeas court would be required to proceed on the assumption that the federal claim was adjudicated on the merits.
>
> This argument goes too far. To be sure, if the state-law rule subsumes the federal standard—that is, if it is at least as protective as the federal standard—then the federal claim may be regarded as having been adjudicated on the merits. But what if, for example, in at least some circumstances the state standard is less protective? Or what if the state standard is quite different from the federal standard, and the defendant's papers made no effort to develop the basis for the federal claim? What if a provision of the Federal Constitution or a federal precedent was simply mentioned in passing in a footnote or was buried in a string cite? In such circumstances, the presumption that the federal claim was adjudicated on the merits may be rebutted—either by the habeas petitioner (for the purpose of showing that the claim should be considered by the federal court de novo ) or by the State (for the purpose of showing that the federal claim should be regarded as procedurally defaulted).

Id. at 301–302. On this basis, the Supreme Court held that "[w]hen the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge." Id.

In the state appeal, Mr. Hinkle framed his claim as a violation of his right to present a complete defense in his initial appellate brief. ECF 11-1. The heading of the argument referenced his constitutional rights rather than Indiana evidentiary rules. He frequently invoked terms emphasizing the federal nature of his claim, such as "the fundamental right to due process," "a meaningful opportunity to present a complete defense," and "constitutional protections." He also cited to the Sixth Amendment in support of his argument. Mr. Hinkle's reply brief continued to frame his claim as a constitutional violation, citing federal cases as pertinent authority.

ECF 11-3. In sum, the argument presented in the appellate briefs asserted a constitutional violation rather than a violation of state evidentiary rules.

That the court of appeals quoted and discussed Hyser at length doesn't entirely persuade the court that the court considered Mr. Hinkle's constitutional claim on the merits. Hyser discussed both the constitutional issue of whether the trial court violated the right to present a complete defense as well as whether the evidence should have been admitted under state evidentiary rules. The quoted portion of Hyser contains no reference to the constitutional issue presented in that case. ECF 11-10 at 11-12. Further, the appellate court made no reference to the right to present a complete defense and didn't contain any other terms or citations that would suggest consideration of the constitutional claim. The Warden contends that it is implausible that the appellate court reviewed Hyser and Mr. Hinkle's brief but inadvertently overlooked his constitutional claim, but it seems equally implausible that the appellate court intentionally declined to discuss the constitutional claim in lieu of a state evidentiary claim that Mr. Hinkle didn't assert.

Notwithstanding these concerns, several statements from the appellate opinion indicate that appellate court had reviewed Mr. Hinkle's appellate briefs, which included his argument about the right to present a complete defense, and the substantial discussion of a case involving that right and cited by Mr. Hinkle in his briefs supports this proposition. While there is some basis to suspect that the appellate court overlooked Mr. Hinkle's constitutional claim, the issue of whether proffered evidence is admissible under State evidentiary rules is a material, if not

dispositive, factor in resolving a claim regarding the right to present a complete defense. <u>Kubsch v. Neal</u>, 838 F.3d 845, 858 (7th Cir. 2016) ("One, though not the only, way that reliability and trustworthiness can be demonstrated is to show that the evidence closely resembles evidence that would be admissible under the state's rules."); <u>but see</u> <u>Holmes v. South Carolina</u>, 547 U.S. 319, 324 (2006) ("This right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve."). As a result, it may be the case that the state court believed that its discussion of evidentiary rules was sufficient to cover Mr. Hinkle's related claim that he was entitled to present a complete defense. Because the presumption that a state court adjudicated a claim on the merits is a strong one, the court will review Mr. Hinkle's claims under the deferential standard set forth in 28 U.S.C. § 2254(d).


## ANALYSIS

### Right to Present a Complete Defense

Mr. Hinkle argues that the trial court deprived him of the right to present a complete defense by excluding evidence about the victim's motive to fabricate the accusation against him. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." <u>Holmes v. South Carolina</u>, 547 U.S. 319, 324 (2006). "Of course, the right to confront and to cross-examine is not

absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." <u>Chambers v. Mississippi</u>, 410 U.S. 284, 295 (1973). "But its denial or significant diminution calls into question the ultimate integrity of the fact-finding process and requires that the competing interest be closely examined." <u>Id.</u>

The prosecution charged Mr. Hinkle with child molesting and sexual misconduct with a minor. Snyder Dep., Pet. Ex. 9. At a pretrial conference, trial counsel opposed a motion in limine on the victim's drug use and a family intervention in 2008. Trial Tr. 53-60. She argued that these topics were relevant to show the victim's motive to fabricate the accusation against Mr. Hinkle. <u>Id.</u> The trial court indicated that it would likely allow evidence of drug use only if the drug use interfered with the victim's ability to recall the relevant events but invited trial counsel to raise the issue again at trial. <u>Id.</u>

Only three witnesses testified at trial. The victim (Mr. Hinkle's nephew) testified that Mr. Hinkle molested him in Mr. Hinkle's bedroom in 2003 when the victim was twelve years of age on a summer visit from his residence in northern Michigan. <u>Id.</u> at 458-481. This encounter, which occurred shortly after a brief hotel stay, involved Mr. Hinkle performing oral sex on the victim followed by the victim's manual stimulation of Mr. Hinkle. <u>Id.</u> A similar incident occurred two years later during another summer visit in Mr. Hinkle's basement. <u>Id.</u> The victim's grandmother also testified. <u>Id.</u> at 545-55. She corrected the victim's timeline of the summer visits, noting that the hotel stay referenced by the victim occurred in 2004 and that the

victim visited her and other extended family members during several summers and that these visits lasted between two and three weeks. Id. She testified that the victim going to the Hinkle residence to spend an afternoon, evening, or night was a normal occurrence during the summer visits. Id. For the defense, Mr. Hinkle's spouse testified that the victim visited the Hinkle residence only once in 2004 when Mr. Hinkle was not home and never visited the residence in 2005. Id. at 582-610.

During the victim's cross-examination, trial counsel asked the trial court if she could cross-examine him about the circumstances of when he first accused Mr. Hinkle of molestation. Id. at 506-508. Counsel argued that information about these circumstances would allow her to challenge the victim's credibility by establishing motive to fabricate the accusation. Id. During an offer of proof outside the jury's presence, the victim testified as follows:

> **Trial Counsel:** Now there comes a point in time that Swan and your grandmother say you sat down to have an intervention is how we've referred to it. Is that fair to say?
>
> **Victim:** Yeah, not quite an intervention. It wasn't like -- sit me down, you're going to like rehab, like that. It was more, you know. Like them letting me know that they knew I had had problems, and what are we going to do about it kind of conversation that, the whole -- you know, an open conversation about my drug use.
>
> **Trial Counsel:** At the time of that intervention, were you told by your grandmother, Paula, that Swan was going to be stepping in and monitoring you more closely while you were down in Elkhart?
>
> **Victim:** Yes.
>
> **The Court:** That who was going to?
>
> **Trial Counsel:** His uncle, Swan Mishler.

**The Court:** Alright. Go ahead.

**Victim:** Yes. After that he started monitoring me very, very closely, and I knew that would be the case.

**Trial Counsel:** And were you also informed at that point in time that your mom was looking into rehab for you?

**Victim:** Yeah.

**Trial Counsel:** And that rehab was going to be in Oklahoma. Is that correct?

**Victim:** No, I didn't know that much. Like I said, it wasn't like you're going, like you're going to rehab, bud. It -- the option was being explored at that point when they sat me down.

**Trial Counsel:** So you were informed that your mom was looking for rehab. You just didn't know specifically where at that point?

**Victim:** Where, if I was going, it I was going to have to, or.

**Trial Counsel:** And you had never been sent to an out-of-state inpatient rehab program before, is that correct?

**Victim:** No.

**Trial Counsel:** Now following that intervention, you wanted to talk with your mom, is that correct?

**Victim:** Yeah. At the end of it, at the end of the, if you want to call it an intervention.

**Trial Counsel:** Well, S.B., what would you call it?

**Victim:** It was more an open family discussion about my drug use. It was just an open discussion.

\* \* \*

**Trial Counsel:** Your Uncle Swan and your Grandmother Paula wouldn't allow you to call your mother, Alisa; is that correct?

**Victim:** Yes.

**Trial Counsel:** And they wouldn't let you call her because you had a habit of playing your family against each other. Is that correct?

**Victim:** A little bit, yeah.

**Trial Counsel:** And they were also worried that you would misconstrue things to you mother, is that correct?

**Victim:** You will have to ask them. I'm not sure. I don't really know why they wouldn't let me call my mom, but I just was real adamant that I wanted to talk to her. And they're like, well, I told her that I was like, Mom, my mom is going to need to talk to you right after, anyways. And you're going to know what this is about, but I need to talk to my mom about something. I need to talk to my mom about something, and they just wouldn't let me, so I told Swan.

**Trial Counsel:** And it was following this discussion about rehab and this discuss that Swan was going to be monitoring your activities closely-

**Victim:** Yeah. But I want to clarify that.

**The Court:** Just a minute. Just a minute. She hasn't asked a question yet. So let her finish the question before you attempt to answer it. Go ahead with your question.

**Trial Counsel:** It was following this that you then made the accusation against James Hinkle, is that correct?

**Victim:** Yes.

**Trial Counsel:** And you made that accusation initially to your Uncle Swan Mishler?

**Victim:** Yes, after trying to, to my mother.

**Trial Counsel:** After what? I didn't hear that.

**Victim:** After I, after I was --  I tried to call my mother to tell her, but they wouldn't let me so I told Swan.

**Trial Counsel:** And even at this time of the open discussion about your drug usage, you still didn't tell the family the extent of your drug problems, is that correct?

14

**Victim:** No. I was pretty honest with them. I told them that I had tried, I told them that I had tried heroin, and I mean I didn't sit there and tell them everything, you know. I didn't tell them like how often, but I told them like what I tried and I was pretty honest with them.

**Trial Counsel:** So you told them what you tried, but you were still minimizing the amount?

**Victim:** Yeah, I was definitely minimizing.

**Trial Counsel:** And while you were down here visiting your grandmother in 2008, you were, you would acknowledge that you were manipulating your grandmother and acting very deceptive with your grandmother at that point in time, is that correct?

**Victim:** In certain ways, yeah. So that-- or I was doing that so that I could spend time with my Uncle Swan and my cousins, because my mom didn't want me around Jim or Swan.

**Trial Counsel:** Now you also manipulated your mother with respect to your drug usage. Is that correct?

**Victim:** I kept it hidden as best as I could, yeah.

**Trial Counsel:** In fact, you acknowledge that you have lied to her about your drug usage?

**Victim:** Yes.

**Trial Counsel:** And you also acknowledge that you would lie about anything to hide the drug usage that you were involved in at that point in time?

**Victim:** I don't fully understand your question.

**Trial Counsel:** In instances where you would lie to your mother, was it an attempt to hide your drug usage from her?

**Victim:** Yeah, I would, I would, I would lie to her, you know, tell her I was certain places and, you know, so that I could go do drugs, smoke pot, whatever, yeah I would lie to, you know, to get away with it.

Id. at 508-518. The trial court observed that Mr. Hinkle wasn't present during the intervention, found no connection between the intervention and a motive to fabricate an accusation, and excluded this testimony. Id. at 521.

The Court of Appeals of Indiana considered whether the trial court abused its discretion by denying the admission of the victim's testimony on the intervention. ECF 11-10 at 10-13. The appellate court rejected the claim, noting that the victim had testified that he didn't know his family intended to impose consequences for his drug use and that he believed that the meeting was simply an open discussion about his drug use. Id. The appellate court concluded that the record contained no evidence that the victim had fabricated the accusation. Id.

Mr. Hinkle's argument evokes two separate but related constitutional principles. The Sixth Amendment to the U.S. Constitution grants an accused the right to confront and cross examine witnesses. The Confrontation Clause guarantees an accused an opportunity to cross-examine witnesses against him, though not necessarily "in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985).

For example, in Davis v. Alaska, 415 U.S. 308 (1974), the prosecution charged the defendant with the burglary of a safe from a bar. Id. at 309-310, 320. A teenager who lived near where law enforcement had found the safe served as the key eyewitness, testifying that he had spoken with the defendant near his home and identified him for law enforcement. Id. at 309-310. At the time of the burglary, the teenager had been serving his sentence of probation, issued by a juvenile court, for

16

robbing two cabins. <u>Id.</u> at 310-311. The defendant sought to introduce evidence of the juvenile adjudication to show that the teenager had hastily identified the defendant "out of fear or concern of possible jeopardy to his probation" and "to shift suspicion away for himself" as potential culprit. <u>Id.</u> at 311. The trial court denied the request based on a state evidentiary rule that didn't allow the admission of juvenile adjudications. <u>Id.</u> On cross-examination, the teenager flatly denied that he had any concern that law enforcement might view him as a potential suspect. <u>Id.</u> at 312.

The Supreme Court observed that the evidentiary ruling eliminated an otherwise valid impeachment strategy in its entirety. <u>Id.</u> at 318. It found that the right to confront one's accusers outweighed the public interest in protecting the anonymity of juvenile delinquents. <u>Id.</u> at 319. It concluded that this evidentiary ruling violated the defendant's right of confrontation, reasoning that "the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the teenager's] testimony which provided a crucial link in the proof of petitioner's act." <u>Id.</u> at 318.

And in <u>Delaware v. Van Arsdall</u>, 475 U.S. 673 (1986), the prosecution presented a witness who testified that he saw the murder defendant sitting at the foot of the victim's bed where she was found dead near the time of her killing. <u>Id.</u> at 674-675. The defendant sought to cross-examine the witness about the effect that the prosecution's dismissal of a public drunkenness charge had on his testimony, but the trial court excluded it under the state evidentiary rule for undue prejudice. <u>Id.</u> at 676. The Supreme Court observed that "the trial court prohibited all inquiry into the

17

possibility that [the witness] would be biased as a result of the State's dismissal charge." Id. at 679. It also found that a jury could have reasonably found the dismissal motivated the witness to provide favorable testimony for the prosecution and concluded that the trial court violated the defendant's rights under the Confrontation Clause. Id.

The confrontation right isn't absolute. Generally, if the jury heard enough about a witness's motives and biases to make a critical credibility assessment, the trial court doesn't offend the Constitution by limiting cross-examination. *See* United States v. Hart, --- F.3d ___, ___, 2021 WL 1623379 at *5 (7th Cir., Apr. 27, 2021) ("Although Hart's argument on appeal implicates core Confrontation Clause values, it does not do so directly; the district court provided Hart ample opportunity to impeach or discredit Detective Motyka and Agent Yoder on cross-examination in the government's case-in-chief."); United States v. Trent, 863 F.3d 699, 706 (7th Cir. 2017); United States v. Clark, 657 F.3d 578, 584 (7th Cir. 2011).

So, too, the cross-examination of the victim of Mr. Hinkle's trial: the cross-examiner elicited cross-examination testimony before the jury that the victim had prior convictions for unlawful use of another person's credit card, auto theft, and retail; that he had been manipulating and untruthful to his mother and grandmother, and that he had a history of playing off family members against each other.

But these thoughts are pertinent only in passing because Mr. Hinkle didn't present a Confrontation Clause claim to the state courts. He relied on a distinct

constitutional principle found at the intersection of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment: the right to present a complete defense. *See* <u>Holmes v. South Carolina</u>, 547 U.S. 319, 324 (2006) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."). The dividing line between the right to confrontation and the right to present a complete defense isn't always unambiguous, but they are separate principles. The seminal case for the right to present a complete defense was <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1973). Our court of appeals reviewed <u>Chambers</u> and its progeny and set out some of the hallmarks of the right to present a defense:

> First. . . the cases in which the <u>Chambers</u> principle has prevailed dealt with the exclusion of evidence or the testimony of defense witnesses, not a defendant's ability to present an affirmative defense. Second, we think it no accident that the cases in which the Court has applied <u>Chambers</u>—<u>Green</u>, <u>Crane</u>, <u>Rock</u>, and <u>Holmes</u>—have involved murder and often the death penalty. Third, the proffered evidence must be essential to the defendant's ability to present a defense; it cannot be cumulative, impeaching, unfairly prejudicial, or potentially misleading. Fourth, as the Court put it in <u>Chambers</u> itself, the evidence must be reliable and trustworthy. One, though not the only, way that reliability and trustworthiness can be demonstrated is to show that the evidence closely resembles evidence that would be admissible under the state's rules. Finally, the rule cannot operate in an arbitrary manner in the case at hand. Arbitrariness might be shown by a lack of parity between the prosecution and defense; the state cannot regard evidence as reliable enough for the prosecution, but not for the defense. But that does not exhaust the ways of satisfying this criterion. A refusal to consider corroborating circumstances, an unexplained departure from an established line of decisions, or an assumption about the relative weight of evidence (as in <u>Crane</u>) might also suffice.

Kubsch v. Neal, 838 F.3d 845, 858 (7th Cir. 2016).

The Indiana court of appeals opinion didn't specifically refer to the constitutionally protected right to present a complete defense, but it distinguished Hinkle's case from Hyser v. State, 996 N.E.2d 443 (Ind. Ct. App. 2013), in which the court had reversed a conviction for denial of that right. Hinkle v. State, 97 N.E.3d at 662-664. When a state court doesn't explain why it denied a habeas claim on the merits, "the federal courts are obligated . . . to postulate arguments or theories that could have supported the state court's decision and then defer to the bottom-line decision unless it was an unreasonable application of federal law." Whatley v. Zatecky, 833 F.3d 762, 774 (7th Cir. 2016). "In order for a federal court to find a state court's application of our precedent unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520–21 (2003).

Mr. Hinkle framed his appellate argument as a violation of his right to present a complete defense, so it wouldn't have been unreasonable for the State court to accept this framing and to evaluate the argument under the Chambers line of cases. This case doesn't involve a murder conviction or the death penalty, and Mr. Hinkle sought to use the intervention solely for purposes of impeachment. As explained in Kubsch, the Supreme Court has never found a violation of the right to present a complete defense under these circumstances, so it wouldn't have been unreasonable for the state court to conclude that no violation occurred in Mr. Hinkle's trial. The court can't find that the state court made an unreasonable determination on the claim

that the trial court violated Mr. Hinkle's right to present a complete defense, so this claim isn't a basis for habeas relief.

## Ineffective Assistance of Trial Counsel

Mr. Hinkle says he's entitled to habeas relief because he received ineffective assistance of trial counsel. To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668 (1984). The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." Id. at 693. In assessing prejudice under Strickland, "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). On habeas review, [the] inquiry is now whether the state court unreasonably applied Strickland." McNary v. Lemke, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." Id.

Mr. Hinkle argues that he received ineffective assistance of trial counsel because trial counsel didn't object to the prosecution's amended charges. He contends that the prosecution added a charge of child molestation as a Class A felony because he declined to plead guilty in violation of Owens v. State, 822 N.E.2d 1075 (Ind. App. 2005). On December 20, 2008, the prosecution charged Mr. Hinkle with two counts of

incest as a Class B felony and two counts of sexual misconduct with a minor as a Class D felony. Snyder Dep., Pet.'s Ex. 8. On August 12, 2013, the prosecution amended the charges to include only one count of child molestation as a Class A felony and one count of sexual misconduct with a minor as a Class D felony. Snyder Dep., Pet.'s Ex. 9.

The Indiana court of appeals rejected this claim, relying on trial counsel's testimony that "she had strategically declined to object to avoid having the State simply charge the Class A felony allegation under a new cause number." ECF 11-10 at 21. In Owens v. State, the Court of Appeals of Indiana recognized that, under Indiana law, a presumption of prosecutorial vindictiveness applied when the prosecution brought more serious charges after a criminal defendant successfully moved for a mistrial or prevailed on appeal. 822 N.E.2d at 1077. The appellate court applied that presumption to Mr. Owens, who had prevailed on appeal after his conviction at trial and was charged with an additional Class B felony. Id. at 1078. Mr. Hinkle didn't prevail on appeal or successfully move for a mistrial, so Owens doesn't govern his case. Further, the limitations period for child molestation extends to the date that the victim reaches thirty-one years of age. Ind. Code. § 35-41-4-2(e). The victim was twenty-two years old at the time of trial, Trial Tr. 459, so trial counsel's concern that the prosecution would have responded to a successful objection by simply initiating another criminal case against Mr. Hinkle was well-founded. Because the state court's determination on this claim was not unreasonable, it is not a basis for habeas relief.

Mr. Hinkle argues that he received ineffective assistance of trial counsel because trial counsel didn't object to the delayed trial under Ind. Crim. R. 4(C). He contends that the period of time between April 8, 2013, to June 3, 2013, shouldn't have been attributed to congestion of the court calendar because the prosecution misrepresented the intent to proceed to trial on April 8 in another case. Ind. Crim. R. 4(C) reads as follows:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so held shall, on motion, be discharged.

The Indiana court of appeals rejected this claim, finding that each trial continuance was attributable to Mr. Hinkle or to congestion of the court calendar. ECF 11-10 at 23. In the response to the habeas petition, the Warden provides a detailed calculation showing that, even if the April 2013 continuance was attributed to the prosecution, the August 2013 trial date would have remained timely under Ind. Crim. R. 4(C). ECF 11 at 23-25. Mr. Hinkle doesn't explain how this calculation is incorrect or how trial counsel could have otherwise prevailed on an objection under Ind. Crim. R. 4(C), so this claim isn't a basis for habeas relief.

Mr. Hinkle argues that he received ineffective assistance of trial counsel because trial counsel didn't ask for an instruction on unanimity as required by <u>Baker v. State</u>, 948 N.E.2d 1169 (Ind. 2011). In that case, the Indiana Supreme Court observed that, when the prosecution charges the defendant with particular act of child molestation but introduces evidence of multiple acts, "it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense." <u>Id.</u> at 1175. To ensure a unanimous verdict, the Indiana Supreme Court held:

> [T]he State may in its discretion designate a specific act (or acts) on which it relies to prove a particular charge. However if the State decides not to so designate, then the jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged.

<u>Id.</u> at 1177. The Indiana Supreme Court noted that the prosecution hadn't designated a specific act and that the trial court didn't offer an instruction on unanimity but found no fundamental error because "the only issue was the credibility of the alleged victims." <u>Id.</u> at 1178-1179. In other words, the victims were the only source of inculpatory evidence against the defendant, so by convicting the defendant, the jury unanimously decided to credit the victims, and there was no basis to suspect that the jury credited the victims with respect to some acts but not others.

The Court of Appeals of Indiana rejected Mr. Hinkle's claim in a similar manner, finding that the lack of an instruction on unanimity didn't prejudice him because "the only issue was S.B.'s credibility." ECF 11-10 at 24-25. As in <u>Baker</u>, the

victim was the only source of inculpatory evidence against Mr. Hinkle at trial. The victim testified about a larger pattern of molestation and made passing references to other specific instances, but his testimony focused on two specific incidents in 2004 and 2005. Trial counsel raised credibility concerns with respect to the victim, but Mr. Hinkle doesn't explain how these concerns could have operated to persuade the jury to credit vague allusions to acts of molestation but to discredit the testimony about the specific incidents. Mr. Hinkle hasn't demonstrated prejudice, so this claim isn't a basis for habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000). A certificate of appealability is warranted on the issue of whether Mr. Hinkle's claim that the trial court violated his right to present a complete defense entitles him to habeas relief.

For these reasons, the court DENIES the amended habeas corpus petition (ECF 9), GRANTS a certificate of appealability on the claim that the trial court

violated the right to present a complete defense, and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on May 13, 2021

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT